| 87  | 151 |
| 105 | 586 |

THE CITY OF ST. LOUIS v. THE MISSOURI RAILWAY COMPANY *et al., Appellants.*

**St. Louis City:** STREET RAILWAY, REPAIR OF STREETS BY. The defendant, the Missouri Railway Company, a street railroad in the city of St. Louis, held bound, under the charter and ordinances of said city, to keep in repair its streets, to the extent of twelve inches outside of the rails along an extension of defendants' road from its former terminus to Tower Grove Park.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Dyer, Lee & Ellis* for appellants.

(1) The defendant company was exempted, by the act of the general assembly of 1869, from repairing the streets as claimed by respondent. The municipal assembly of the city of St. Louis, under its present charter, has no power to pass ordinances inconsistent with the laws of the state. *St. Louis Ry. v. Railway*, 72 Mo. 67; *St. Louis Ry. v. Railway*, 69 Mo. 65; City Charter, 2 R. S., 1879, p. 1585. (2) It is to be presumed in construing the ordinance· authorizing the extension of defendants' road that the municipal assembly did not intend to repeal privileges and exemptions granted by a higher law, and, unless the terms of the ordinance abso-

lutely require such a construction, therefore, when section four of said ordinance provides that the privileges hereby granted, are subject to all general ordinance and charter provisions relating to street railways, and applicable to this extension, there is a manifest significance in the words "applicable to this extension." If the intention was to subject the extension absolutely to the charter provisions relating to street railways, these words would have been omitted.

*Leverett Bell* for respondent.

The act of 1869 is not to be construed as exempting defendant from repairing the streets outside of its tracks on a new piece of road built in 1881, under the authority of an ordinance accepted by the defendant, and requiring it to make such repairs.

NORTON, J.—This is proceeding instituted by information in the police court of the city of St. Louis for violating section 3, of ordinance number 11,736, of said city, which is as follows:

"SECTION 3. Whenever a part of a street, crosswalk, culvert, or other structure, which has to be maintained by any street railway company according to its charter and the charter and ordinances of the city of St. Louis, shall be out of repair or in bad condition, the street commissioner shall notify the president or superintendent of said railroad company forthwith to cause the same to be repaired and put in good condition; and if such company shall fail or refuse to obey such notice within the time specified therein, then the company and the president and the superintendent or manager thereof, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five dollars, nor more than five hundred dollars for each and every offence."

Approved June 28, 1881.

Defendants were fined one hundred dollars, from

which judgment they appealed to the court of criminal correction, where a like judgment was rendered, from which defendants appealed to the St. Louis court of appeals, where said judgment was affirmed, and from which defendants have appealed to this court.

In the trial court below the following facts were agreed on: The Missouri Railway Company was incorporated in May, 1859, under an act of the general assembly of Missouri, entitled "an act to authorize the formation of railroad associations, and to regulate the same," approved December 13, 1855. The company so organized is the Missouri Railroad Company, referred to and included in the provisions of an act, entitled "an act concerning street railroads in the city of St. Louis," approved January 16, 1860. The company accepted and complied with all the requirements of the act, entitled "an act to regulate the sale of tickets," etc., approved March 3, 1869. When the last mentioned act was adopted the ordinances of St. Louis required street railroad companies in St. Louis, including the defendants, to keep in good order and repair the space between the rails and a space, at least twelve inches in width, outside the rails. The defendants, the corporation, its president and superintendent, refused to repair outside the rails, as charged in the information, on the extension of the road, built and operated under ordinance 11,580. This ordinance was approved January 31, 1881, and by sections 1, 2 and 3, the defendant company was authorized to extend its railroad by laying down a single or double track from the then terminus of the road, on Grand avenue and Manchester road, along and on the Manchester road to Tower Grove station, or where the Pacific railroad crosses said Manchester road, and thence on the Manchester road and Tower Grove avenue to Tower Grove park.

The fourth and fifth sections of said ordinance are as follows:

"SECTION 4. This ordinance shall continue in force

until May 6, 1909, and the privileges hereby granted are subject to all general ordinances and charter provisions relating to street railways and applicable to this extension."

"SECTION 5. It is expressly understood that by the acceptance of the provisions of this ordinance the Missouri Railroad Company waive all rights they may have to streets within three blocks of this extension claimed under the act of the general assembly, approved January 16, 1860."

It is for the failure of defendant company to repair, and keep in repair, a space twelve inches wide outside of its rails and on each side thereof, where they are laid on the road and avenue over which, by the above ordinance, it was authorized to extend its road from Grand avenue to Tower Grove park; and it is admitted that defendants were liable unless the act of March 3, 1869, referred to in the agreed statement exempts it from the duty or relieves it from the burden of making such repairs. It is claimed that such exemption is to be found in the third section of said act, which is as follows:

"In addition to the annual tax herein provided, each of said railway companies shall pay a license to the city of St. Louis, to be fixed by ordinance of said city, not exceeding twenty-five dollars per annum, for each car run by said companies respectively, and the taxes and license payable under the provisions of this act, shall be in lieu of all taxes, burdens and expenditures and repairs of streets outside of their tracks, required of said company, by the former laws and ordinances." Laws of 1869, p. 207.

We think it clear that on all streets of the city over which defendant, at the time of the passage of said law, had acquired from the city the right to build and operate its road, that the payment of the tax and license specified relieved it from the burden of repairing such streets outside of its track, which, by any former law or ordinance, was imposed upon it. In this case, however,

defendant is not proceeded against for not repairing the street outside of its track over which it had acquired the right to build and operate its railroad when the said act was passed ; but it is sought to make it liable for not repairing streets outside of its track over which the right to construct and operate its road, so far as the plaintiff was concerned, was acquired in 1881 by virtue of said ordinance 11,580. The franchise conferred by this ordinance was accepted, and in accepting it the defendant took it "subject to all general ordinances and charter provisions relating to street railways applicable to this extension." The charter of the city, adopted in 1876, and in force when ordinance 11,580 was adopted, contained the following provisions :

"Street railroad companies shall keep the streets between the rails and to the extent of twelve inches outside of each rail in perfect repair, as nearly on a level with such rails as practicable, and that portion outside the rails shall be of the same material as the street itself." Sec. 5, art 10, of the Charter ; 2 R. S., 1617.

The city charter also contains this provision :

"No street railroad shall hereafter be incorporated or built in the city of St. Louis except according to the above and other conditions in this charter, and in such manner and to such extent as may be provided by ordinance." Sec. 1, art. 10, of the Charter ; 2 R. S., 1616. And by the same section of the charter, the municipal assembly are empowered "to determine all questions arising with reference to street railroads in the corporate limits of the city, whether such questions may involve the construction of such street railroads, granting the right of way or regulating or controlling them after their completion."

It is insisted that the provision of the charter first above quoted is inconsistent with the act of March 3, 1869, and is, therefore, void by reason of the constitutional requirement that the charter adopted must be in harmony with the constitution and laws of the state. If

it were sought in this action to make defendant liable for not repairing outside of its track those streets over which, at the time of the passage of the act, defendant had con-structed, or had acquired the right from the city to construct and operate its road, the question presented would arise; but this proceeding is not of that char-acter. It only seeks to make defendant liable for its failure to repair the streets outside of its track over which it acquired the right to build its road after the adoption of the city charter. There is nothing in the act of 1869 requiring the city to confer upon defendant the franchise which it did confer by the said ordinance 11,580, adopted in 1881. It is not claimed that defendant could have built its road along and on the Manchester road and Tower Grove avenue to Tower Grove park, without first having obtained the right from the city to do so. It was certainly within the power of the city to grant or refuse the right, and by the terms of the charter the city could not grant the right without requiring defendant to keep the streets  *  *  *  to the extent of twelve inches out-side of each rail in repair along and on the streets on which the right to build its road might be granted. Section four in said ordinance, though peculiar in phrase-ology, was doubtless intended to meet these charter pro-visions, and by it defendants, having accepted the privileges which the ordinance conferred, agreed that they should be "subject to all general ordinances and charter provisions relating to street railroads and appli-cable to this extension."

That the charter provisions above quoted relate to street railroads is clear, and that they are applicable to this extension I have no doubt. It is said in the second provision of the charter above quoted that "no street railroad shall hereafter be incorporated or built in the city of St. Louis, except according to the above and other conditions of this charter." Now, the extension referred to in said section four, *supra*, was to be made by build-

ing a street railroad on and along streets on which defendant had no right to build or construct, so far as the city of St. Louis is concerned, except as ordinance 11,580 gave it the right. Although the extension was of a street railroad, the terminus of which was Grand avenue, the extension consisted in building a street railroad over certain other streets from its terminus to Tower Grove park. Inasmuch as defendant agreed by said section four that the priviliges conferred by the ordinance should be subject to all general ordinances and charter provisions relating to street railroards and applicable to the extension, inasmuch as the provisions of the charter above quoted relate to street railroads, and are, as I think, for the reasons above given, applicable to the extension of defendant's road, authorized by ordinance 11,580 ; and inasmuch as by said charter provisions the duty is imposed on street railroads to keep the streets * * * to the extent of twelve inches outside of each rail in repair, the judgment against defendant, for failing to perform this duty, was rightfully rendered.

We attach no significance to the fact that defendant paid a license tax of twenty-five dollars to the city, for the reason that such payment could not exempt defendant from the performance of its contract obligations assumed by its acceptance of the provisions of the said ordinance 11,580.

The judgment is hereby affirmed, with the concurrence of all the judges.